UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL ARNDT,

    Plaintiff,

vs.     Case No. 8:09-CV-1239-T-27TBM

CONCERT HEALTH PLAN
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Plaintiff's "Opposition to Defendant's Motion to Remove," which is construed as a motion to remand (Dkt. 10), Defendant's motion to strike Plaintiff's demand for a jury trial (Dkt. 5), and Plaintiff's motion for attorneys' fees and costs (Dkt. 12). Defendant filed memoranda in support of its notice of removal (Dkt. 2), in opposition to Plaintiff's motion to remand (Dkt. 15), and in opposition to the motion for attorneys' fees (Dkt. 14). Plaintiff filed a memorandum in opposition to the motion to strike (Dkt. 9). Upon consideration, Plaintiff's motion to remand (Dkt. 10) is **GRANTED**, Defendant's motion to strike (Dkt. 5) is **DENIED**, and Plaintiff's motion for attorneys' fees (Dkt. 12) is **DENIED**.

*Background*

The Allstate Independent Insurance Agents Group is a multiple employer trust created to negotiate group health insurance benefits for independent Allstate agents. The administrator of the trust, J.T. Associates, Inc., obtained group health insurance through Concert Health Plan Insurance Company ("Concert"). The group's initial application stated that each employer would contribute at least 50% of the premium for any participating employees. The application further provided that

any employer who contributed less than 100% of the premiums for each participating employee would require 75% of eligible employees to participate in the program. The trust only offered Concert's group coverage to licensed Allstate agents and their staff.

Michael Arndt is a licensed Allstate agent. He works for the Allstate insurance agency L.J. Michaels, Inc., which is his chapter S corporation. Arndt and his wife, who is also a licensed Allstate agent, are the principals of L.J. Michaels. There is no evidence that L.J. Michaels employs anyone other than Arndt and his wife.

Arndt completed an application for health insurance through Concert and returned it to J.T. Associates. Arndt's wife did not apply for coverage. Thereafter, Concert provided a certificate which stated that Arndt's health insurance coverage was effective January 1, 2008. J.T. Associates collected Arndt's health insurance premiums and remitted the payments to Concert. Although Arndt paid the premiums from L.J. Michaels' checking account, the entire amount of each payment was deducted from Arndt's compensation. L.J. Michaels did not promote or publicize the insurance plan. Further, L.J. Michaels did not receive any payments or compensation related to the plan.

In late December 2007, Arndt sustained a brain infection which required hospitalization and medical care for several months. He submitted claims for the treatment to Concert. Concert refused to pay the claims.

Arndt commenced an action in state court to recover the unpaid benefits. Concert removed the case to federal court on the premise that ERISA preempts Arndt's state law claims. Arndt has moved to remand, arguing that his purchase of health insurance from Concert falls squarely within the safe harbor provision of 29 C.F.R. § 2510.3-1(j) and therefore his employer's plan is not subject to ERISA. Concert contends that the relevant plan for purposes of removal jurisdiction is the trust's

plan, which is a multiple employer welfare arrangement ("MEWA") as defined in 29 U.S.C. § 1002(40)(A). Concert argues the MEWA constitutes an employee benefit plan governed by ERISA.

*Analysis*

As the removing party, Concert bears the burden of establishing federal subject matter jurisdiction. *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, --- F.3d ----, 2009 WL 5126236, at *2 (11th Cir. Dec. 30, 2009). Concert contends that removal is proper because ERISA preempts Arndt's claims. There are two types of preemption which may apply to Arndt's action. *Id.* at *3. The first, known as "conflict preemption" or "defensive preemption," "arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that 'relates to' an ERISA plan." *Id.* (quoting 29 U.S.C. § 1144(a)). Conflict preemption is an affirmative defense to state law claims. *Id.* In accordance with the well-pleaded complaint rule, conflict preemption does not confer federal subject matter jurisdiction and therefore cannot serve as a basis for removal. *Id.* The second type of preemption, known as "complete preemption" or "super preemption," "derives from ERISA's civil enforcement provision, § 502(a), which has such 'extraordinary' preemptive power that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quotation omitted). Actions containing state law claims which are completely preempted are removable to federal court. *Id.*

Arndt's motion to remand challenges the existence of federal subject matter jurisdiction. Therefore, for present purposes, the only question is whether complete preemption applies to Arndt's claims. *Id.* at *4. Complete preemption arises where: (1) the plaintiff could have brought his claim under § 502(a), and (2) no other legal duty supports the plaintiff's claim. *Id.* To satisfy the first part, the plaintiff's claim must "fall within the scope" of ERISA § 502(a)(1)(B), which provides:

> A civil action may be brought-- (1) by a participant or beneficiary-- ...
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

*Id.* at *9; 29 U.S.C. § 1132(a)(1)(B). A "plan" within the meaning of the statute is an "employee welfare benefit plan" governed by ERISA. 29 U.S.C. § 1002(3). Accordingly, an individual's suit which "complain[s] of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan . . . falls within the scope of ERISA § 502(a)(1)(B)." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

Here, the question turns on whether Arndt was entitled to coverage on account of an ERISA-regulated employee benefit plan. That question cannot be reached, however, before determining which is the relevant plan for purposes of the complete preemption analysis. Without citing any authority, Concert contends that the MEWA itself is the relevant plan.[1] By contrast, Arndt focuses on the purchase of health insurance through his employer, L.J. Michaels. The Court agrees with Arndt.

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries.'" *Id.* at 208 (quoting 29 U.S.C. § 1001(b)). Accordingly, ERISA applies to plans which cover participants "because of their employee status in an employment relationship." *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982). ERISA preemption therefore centers on the relationship between the employer and employee. *See Meredith v. Time Ins. Co.*, 980 F.2d 352, 354 (5th Cir. 1993). Whether a group of similarly-situated employers established

---

[1] The cases Concert cites for the proposition that the MEWA is governed by ERISA are unhelpful to determining which is the relevant plan. Each case was brought by a MEWA or its administrator to determine whether the MEWA was subject to state regulation. *See MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178 (5th Cir. 1992); *Wisconsin Educ. Ass'n Ins. Trust v. Iowa State Bd. of Pub. Instruction*, 804 F.2d 1059 (8th Cir. 1986); *National Bus. Ass'n Trust ex rel Nat. Benefits Admins., Inc. v. Morgan*, 770 F. Supp. 1169 (W.D. Ky. 1991). Arndt's action to recover unpaid benefits from his health insurance company is strikingly different from an action brought on behalf of a MEWA to determine whether state regulation is appropriate.

a MEWA to purchase group health insurance merely involves the relationship among the employers.[2] By contrast, whether an employer used the MEWA to procure health insurance for its employees certainly involves the employer-employee relationship. Consequently, "a MEWA is not the entity to which ERISA directs its primary preemptive attention." *Id.* "The question simply is not whether the [Allstate Independent Insurance Agents Group] is a MEWA, but whether [Arndt's] purchase of insurance from it constituted the establishment or maintenance of an employee benefit plan." *Id.*; *see also Donovan*, 688 F.2d at 1372, 74-75 (holding that multiple employer trust was not ERISA plan but finding that certain employers had established ERISA plans by subscribing to the trust in order to provide health insurance for their employees).

As the proponent of federal jurisdiction, Concert bears the burden of establishing that Arndt's purchase of health insurance through the MEWA constituted the establishment of an ERISA plan. *Connecticut State Dental Ass'n*, 2009 WL 5126236, at *2. ERISA applies to plans which meet the statutory definition of "employee welfare benefit plan." 29 U.S.C. §§ 1002(3), 1003(a). An "employee welfare benefit plan" is

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

---

[2] There is no contention that Allstate was Arndt's employer or that Allstate established the MEWA. Rather, Concert argues that independent Allstate agents, as a group of employers, established MEWA. (Dkt. 15, pp. 3, 7). Further, neither party has argued that the Allstate Independent Insurance Agents Group is an employee organization within the meaning of 29 U.S.C. § 1002(4).

29 U.S.C. § 1002(1). However, 29 C.F.R. § 2510.3-1(j) establishes a regulatory safe harbor which excepts from the definition of "employee welfare benefit plan" certain "group or group-type insurance program[s]" "offered by an insurer to employees." Whether a particular plan qualifies for the safe harbor should be addressed first, before analyzing whether the plan constitutes an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1). *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1267 (11th Cir. 2006). The safe harbor applies to group or group-type plans in which:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees . . . ;
>
> (3) The sole functions of the employer . . . with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer . . . receives no consideration in the form of cash or otherwise in connection with the program . . .

29 C.F.R. § 2510.3-1(j).

Concert challenges the first factor on the ground that the MEWA itself requires each employer to contribute at least 50% of its employees' premiums. However, Arndt's wife, a principal of L.J. Michaels, submitted an affidavit which averred that L.J. Michaels did not contribute to any portion of Arndt's premium. Rather, the entire premium was deducted from Arndt's compensation. Concert relies on the affidavit of William Donahue, the Chief Operating Officer of Concert. However, as Plaintiff notes, Donahue has no personal knowledge of Arndt's compensation arrangement with L.J. Michaels. Concert argues, "In the instant case Arndt is both the employer and employee and it is a fiction to say he is paying individually when he is also the employer. Further, the provision requiring the employer to pay 50% of the premium would only apply to Arndt if Arndt

had employees that were also participating."³ (Dkt. 15, p. 9). However, Concert has not submitted competent evidence that L.J. Michaels actually contributed to Arndt's premiums or that L.J. Michaels is, in fact, an alter ego of Arndt. Concert has therefore failed to carry its burden to controvert the first element.

For the second factor, Concert argues that the MEWA required each employer paying less than 100% of its employees' premiums to have at least 75% of its employees participate in the plan. However, there has been no demonstration that L.J. Michaels required Arndt to participate. To the contrary, Concert concedes that Arndt's participation was completely voluntary. Concert does not challenge the third or fourth factors, both of which are supported by the averments of Arndt's wife.

Concert has failed to satisfy its burden of establishing that the regulatory safe harbor of 29 C.F.R. § 2510.3-1(j) does not apply. Consequently, for purposes of complete preemption, Arndt's purchase of health insurance through the MEWA is not an employee welfare benefit plan governed by ERISA. The remaining elements need not be addressed. The federal courts lack subject matter jurisdiction over Arndt's claims.⁴

---

³ Although not addressed by the parties, Concert's argument that (1) Arndt is the owner of L.J. Michaels and (2) no other employees are covered, places Arndt's plan outside ERISA territory. "Plans that cover only sole owners or partners and their spouses, the regulation [29 C.F.R. §2510.3-3] instructs, fall outside Title I [of ERISA]'s domain." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 21 (2004). The regulation applies notwithstanding L.J. Michaels' status as a chapter S corporation. *See* 29 C.F.R. §§ 2510.3-3(b)-(c)(1). Based on the present record, 29 C.F.R. § 2510.3-3 precludes Arndt's purchase of health insurance through the MEWA from constituting the establishment of an ERISA plan. *See Slamen v. Paul Revere Life Ins. Co.*, 166 F.3d 1102, 1104-06 (11th Cir. 1999); *Meredith*, 980 F.2d at 357-58.

⁴ This conclusion is based solely on complete preemption. On this limited record, Concert has failed to meet its burden of establishing federal jurisdiction. However, this decision does not reach the merits of preemption as an affirmative defense. After remand, Concert may be able to develop facts and evidence which establish conflict preemption. This order is therefore not intended to have any preclusive effect on the state court's consideration of ERISA preemption as an affirmative defense. *See Glasser v. Amalgamated Workers Union Local 88*, 806 F.2d 1539, 1540-41 (11th Cir.1986); *Soley v. First Nat. Bank of Commerce*, 923 F.2d 406, 408-10 (5th Cir.1991).

*The remaining motions*

Concert moved to strike Arndt's jury trial demand on the ground that ERISA governed Arndt's claims. Having found that Arndt's claims are not subject to complete preemption, there is no basis for this Court to strike the jury demand. Notwithstanding, the denial of Concert's motion to strike shall be without prejudice to filing a motion to strike the jury demand in state court based on ERISA preemption as an affirmative defense.

Arndt seeks an award of the attorneys' fees he has incurred as a result of the removal. The Court declines to exercise its discretion to award attorneys' fees to Arndt.

*Conclusion*

Accordingly, it is **ORDERED** that

(1) Plaintiff's Opposition to Defendant's Motion to Remove (Dkt. 10) is construed as a motion to remand and is **GRANTED.**

(2) Defendant's motion to strike Plaintiff's demand for a jury trial (Dkt. 5) is **DENIED** without prejudice.

(3) Plaintiff's motion for attorneys' fees (Dkt. 12) is **DENIED.**

(4) This action is **REMANDED** to state court. Pursuant to 28 U.S.C. § 1447(c), the Clerk is directed to mail a certified copy of this order to the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida and to **CLOSE** the case. All pending motions which have not been resolved by this order are **DENIED** as moot.

**DONE AND ORDERED** in chambers this 13th day of January, 2010.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record